IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL HERNANDEZ,** <br>     **Plaintiff,** <br><br> v. <br><br> **DEPT. OF CORRECTIONS,** *et al.* <br>     **Defendants.** | : <br> : <br> : <br> :    **CIVIL ACTION NO. 25-CV-2018** <br> : <br> : <br> : |

**MEMORANDUM**

**GALLAGHER, J.**                                                                                        **NOVEMBER 17, 2025**

In a prior Memorandum and Order, the Court dismissed the Complaint filed by Michael Hernandez, a prisoner currently incarcerated at SCI Phoenix, and granted him permission to file an amended complaint. *See Hernandez v. Dep't of Corr.*, No. 25-2018, 2025 WL 1385111 (E.D. Pa. May 13, 2025). Hernandez has returned with an Amended Complaint asserting civil rights violations arising from an alleged physical and sexual assault that occurred while he was housed at SCI Chester ("SCIC"). Named as Defendants are SCIC Superintendent Gina Clark and six John Doe Correctional Officers; a Doctor John Doe; and Margaret Reif, an employee of Chester County, Pennsylvania. For the following reasons, the claims against Clark will be dismissed in part with prejudice and in part without prejudice, the claims against Dr. Doe will be dismissed without prejudice, and the claim against Reif will be dismissed with prejudice. Hernandez will have the option of pursuing the balance of the claims in the Amended Complaint against the remaining John Doe Correctional Officers or filing a second amended complaint to attempt to cure the defects in his claims against Clark and Dr. Doe.

I.      **FACTUAL ALLEGATIONS**[1]

Hernandez alleges that he was beaten by other inmates while in the recreation yard at SCIC on October 25, 2024. (Am. Compl. at 7.) Three John Doe Correctional Officers observed the assault and did not intervene. (*Id*. and 7, 9.) He was taken to "Security" by a non-defendant female Correctional Officer and interviewed by non-defendant Lieutenant Andrews without the assistance of a translator. (*Id*. at 7.) Andrews made him make a statement that was not incriminating against anyone because he knew he would be returned to his housing unit "to be among [his] attackers." (*Id*.)

Hernandez was assaulted by inmates again the next day, October 26, 2024. (*Id*.) He was, beaten, stabbed, and physically and sexually assaulted to the point of unconsciousness on the D-B Unit, Cell DB-57, at or around 6:00 or 7:00 p.m. (*Id*.) When he came to his attackers were still in his cell, but he was able to escape and run to the unit shower where he saw that different John Doe Correctional Officers had observed the attack. (*Id*.) While in the shower area, Hernandez was given a towel by another inmate to clean himself, and he noticed his shirt had blood stains, and that his rectum was sore. (*Id*.) He observed another John Doe Correctional Officer go to the cell where the incident happened and tell the attackers to clean the area and "cover the incident." (*Id*.) At the next count, a John Doe Correctional Officer observed "how bad [he] was hurt on the attack." (*Id*.) Hernandez claims that, while the area was under camera surveillance, "no identification of [his] attackers" was provided to him by SCIC staff. (*Id*.)

---

[1] The factual allegations are taken from Hernandez's Amended Complaint, which consists of the Court's form complaint available to prisoners to file civil rights cases, as well as type written pages and exhibits. (ECF No. 16.) The Court deems the entire submission to constitute the Amended Complaint and adopts the sequential pagination assigned by the CM/ECF docketing system. The Court notes that the handwritten portion of the Amended Complaint is difficult to read and it appears that Hernandez is not fluent in English.

An unnamed Lieutenant along with an unnamed female Sergeant who spoke Spanish came to speak with Hernandez on October 27, 2025 at around 1:00 p.m. (*Id*.) They appreciated how badly Hernandez was injured and took him to the medical unit where members of the SCIC Security Office took photographs of his wounds and he was then sent to an outside hospital. (*Id*.) He received pain medication and a CT scan and was returned to SCIC the following day and placed in segregation. (*Id*.) Hernandez filed sick call requests because of his pain and he received an "x-ray check" for which he was not told the result. (*Id*.) He appears to claim he did not receive "other proper medical assistance," but does not state what assistance or treatment he requested or required. (*Id*.)

SCIC Superintendent Gina Clark is named as a Defendant because she is "in charge for the supervision and accountability of the directives and orders given to be discharged by the officers under her supervision." (*Id*. at 11.) She allegedly failed (1) to look at security footage and report the attack to the police, (2) to train officials to identify and report crimes at SCIC, and (3) to assign and train higher ranking officers, and was deliberately indifferent to how vulnerable inmates are housed. (*Id*.) Clark also allegedly failed to provide adequate medical care and had Hernandez transferred to a different institution without identifying the attackers or responding to his inquiries about their identities. (*Id*.)

Doctor John Doe knew Hernandez had been physically and sexually assaulted but failed to collect DNA to identify the attackers. (*Id*.) He too failed to report the assault to authorities and failed to treat Hernandez's injuries "before the attack, which had get worse after the attack" and failed to treat the injuries he received during the attack. (*Id*.) Finally, Defendant Margaret Reif is identified as the Controller of Chester County. (*Id*.) She is named as a Defendant because she is

3

responsible for the settlement of claims "made against any officer within the jurisdiction of" Chester County. (*Id*.)

Attached to Hernandez's Amended Complaint are letters in which he attempted to identify correctional officers that were involved with the incident he describes (*id*. at 19-26) and grievances and requests to staff that he filed about the incident. (*Id*. at 27-42.) Hernandez seeks money damages from the Defendants. (*Id*. at 9-11.)

## II.     STANDARD OF REVIEW

The Court has granted Hernandez leave to proceed *in forma pauperis* meaning that the Amended Complaint is subject to statutory screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). That statute requires the Court to dismiss the Complaint if it fails to state a claim. *Id*. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Hernandez is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III. DISCUSSION

Hernandez asserts constitutional claims against the SCIC employee Defendants and against Defendant Reif, who is an employee of Chester County. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

#### A. Official Capacity Claims

Hernandez checked the box on the form he used to file his Amended Complaint indicating that he asserts claims against several of the John Does employed at SCIC in both their individual and official capacities. Claims against government officials named in their official capacity are indistinguishable from claims against the entity that employs them, here the Commonwealth of Pennsylvania. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

As the Court has explained to Hernandez, the official capacity claims against Commonwealth employees must be dismissed because states, their agencies, and state officials acting in their official capacities are not considered "persons" for purposes of § 1983. *Hernandez*, 2025 WL 1385111, at *2 (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 70-71

(1989)). Furthermore, the Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *See Pennhurst State Sch. And Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984); *A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003). The Commonwealth of Pennsylvania has not waived that immunity. *See* 42 Pa. Cons. Stat. § 8521(b). Accordingly, the claims for money damages Hernandez seeks to assert against the SCIC Defendants in their official capacity may not proceed.

### B.     Superintendent Clark

The individual capacity claims against Superintendent Clark are also not plausible. It appears that Hernandez named Clark because she is the individual in charge at SCIC. (Am. Compl. at 11.) She also allegedly failed to (1) look at security footage and report the attack to the police, (2) train officials to identify and report crimes at SCIC, and (3) assign and train higher ranking officers, and was deliberately indifferent to how vulnerable inmates are housed. (*Id*.) Clark also allegedly failed to provide adequate medical care and had Hernandez transferred to a different institution without identifying the attackers or responding to his inquiries about their identities. (*Id*.)

#### 1.     Respondeat Superior

As the Court previously explained to Hernandez, generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *Hernandez*, 2025 WL 1385111, at *2 (citing *Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*)). Also, liability under § 1983 cannot be predicated on a *respondeat superior* basis due to the actions of a subordinate. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d. Cir. Nov. 28, 2022) (*per curiam*). The

6

allegation that Clark is liable because she is in charge at SCIC does not state a plausible claim and is dismissed with prejudice.

### 2. Failure to Investigate

The allegation that Clark failed to look at surveillance footage and report the assault to the police, and failed to inform Hernandez of the identities of his assailants before transferring him to a different institution, also fails to allege a plausible claim.[2] First, it is well established that "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 F. App'x 175, 180 (3d Cir. 2011) (*per curiam*); *see also Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). Second, "an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim." *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003) (quotations omitted); *see also Boseski v. N. Arlington Municipality*, 621 F. App'x 131, 135 (3d Cir. 2015) (*per curiam*) ("Boseski has no cognizable claim against a government entity for its failure to investigate or bring criminal charges against another individual."). There is no other "recognizable constitution right" involved here because, as at least one court has held, there is no protected liberty interest to support a due process claim associated with a prisoner's demand that an alleged rape be investigated by prison officials. *See Pietrak v. Litz*, No. 25-1121, 2025 WL 3015788, at *4 (M.D. Pa. Oct. 28, 2025) (dismissing

---

[2] To the extent Hernandez attempts to state a stand-alone claim based on his transfer, that claim is not plausible because it is well-settled that prisoners have no inherent constitutional right to placement in any particular prison, to any particular security classification, or to any particular housing assignment. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) (holding that the Constitution does not give rise to liberty interest in avoiding transfers to more adverse conditions of confinement); *Lane v. Tavares*, No. 14-991, 2016 WL 7165750, at *16 (M.D. Pa. July 12, 2016) (same).

claims asserting that warden and prison medical contractor refused to investigate a prisoner's claim of sexual assault because the prisoner had "not identified a protected interest that is at stake. There is simply no due process 'life, liberty, or property' interest involved with investigating, or failing to investigate, a sexual assault in prison."; and stating that a violation of the Prison Rape Elimination Act of 2003 (PREA) "would not constitute a Fourteenth Amendment due process infringement"). Accordingly, this portion of the claim against Clark is dismissed with prejudice.[3]

### 3. Failure to Provide Medical Care

Clark also allegedly failed to provide adequate medical care to Hernandez. But Hernandez concedes he was under the care of Doctor John Doe. The claim against Clark is not plausible and will be dismissed with prejudice because "[i]f a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Carter v. Smith*, 483 F. App'x 705, 708 (3d Cir. 2012) (*per curiam*) ("Prison officials cannot be held to be deliberately indifferent merely because they did not respond to the medical complaints of a prisoner who was already being treated by the prison medical staff.").

### 4. Failure to Train

Clark also allegedly failed to train officials to identify and report crimes at SCIC, and to assign and train higher ranking officers. This claim must be dismissed because it is unsupported by any facts and is, thus, conclusory. *Iqbal*, 556 U.S. at 678. That said, "[u]nder Section 1983, a supervisor may be liable for [his or her] failure to train or supervise employees. . . ." *Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). A claim for supervisory liability

---

[3] For these reasons, the claim against Doctor John Doe for failing to collect DNA and report Hernandez's rape to authorities will also be dismissed with prejudice.

or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Where a need for "more or different training . . . is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train . . . can fairly be said to represent official policy," *City of Canton v. Ohio*, 489 U.S. 378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable. In addition,

> In resolving the issue of [supervisory] liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training. . . . Moreover, for liability to attach . . . the identified deficiency in [the] training program must be closely related to the ultimate injury.

*Id*. at 390-91.

Hernandez has failed to allege any of the four elements of a failure to train claim against Clark, specifically that a policy of which she was aware created an unreasonable risk to Hernandez and that she was indifferent to the risk. For that matter, he has failed to allege any non-conclusory facts about unsatisfactory training or how it was closely related to his assault by other inmates. Because the Court previously instructed Hernandez only generally about supervisor liability but did not have cause to provide him with the law governing a failure-to-train theory, *see Hernandez*, 2025 WL 1385111, at *2, this aspect of his claim against Clark will be dismissed without prejudice and Hernandez will be given the option of proceeding only the claims that the Court deems plausible at this time or filing an additional amended complaint to restate his failure-to-train claim.

### 5. Deliberate Indifference

Finally, Hernandez asserts in conclusory fashion only that Clark was deliberately indifferent to how vulnerable inmates are housed.[4] (Am. Compl. at 11.) Because the claim is conclusory it is not plausible and must be dismissed. *Iqbal*, 556 U.S. at 678. Hernandez will be afforded an opportunity to amend this claim as well.[5]

---

[4] Although Hernandez complains about the housing of "vulnerable inmates" using the plural, the Court understands him to be attempting to assert only a claim on his own behalf regarding his treatment as an allegedly vulnerable inmate since a *pro se* litigant may only assert their own claim and may not assert a claim on behalf of any other person. *See Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 232 (3d Cir. 1998) ("The rule that a non-lawyer may not represent another person in court is a venerable common law rule."), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007).

[5] Deliberate indifference to an inmate's safety can state a claim under the Eighth Amendment and includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell*, 441 U.S. at 538-39, 539 n.20). In general, a prisoner must assert that the prison officials consciously disregarded, for example, a serious risk to health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). A claim may be based on a failure to provide a prisoner with reasonable safety, *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000), but a claim based on mere negligence is insufficient to allege a plausible Eighth Amendment violation. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). Should he attempt to amend the deliberate indifference claim, Hernandez should be aware of these elements.

### C.    Doctor John Doe

In addition to the failure to investigate claim already dismissed against Dr. John Doe (*see* footnote 3), Hernandez claims that the doctor also failed to treat his injuries "before the attack, which had get worse after the attack" and failed to treat the injuries he received during the attack. (Am. Comp. at 11.)  This bald statement fails to allege a plausible claim.

To state a plausible constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted).  Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  A serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering." *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).

Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023)

(*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'") (*per curiam*) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)).

Hernandez's allegation that Dr. Doe failed to treat his injuries "before the attack, which had get worse after the attack" and failed to treat the injuries he received during the attack, does not state a plausible claim because (1) he states that he did receive some treatment, and (2) he has failed to provide any facts concerning a serious medical need that went untreated. While he states that he was sexually assaulted and stabbed, Hernandez asserts that when he was injured in the attack, he was taken to the medical unit and then sent to an outside hospital where he received pain medication and a CT scan before being returned to SCIC the following day. He also received an "x-ray check" when back at SCIC, although he was not told the result. (Am. Compl. at 11.) He appears to claim he did not receive "other proper medical assistance," but does not state what assistance or treatment he requested or why it was required. (*Id*.) Also, even though he cannot identify Dr. Doe by name, Hernandez must still allege how Dr. Doe was personally responsible

12

for any failure to treat him. The claim against Dr. Doe will, accordingly, also be dismissed without prejudice and with leave to file a second amended complaint if Hernandez is able to allege facts that he needed treatment was delayed, denied, or prevented by Dr. Doe.

### D.    **Margaret Reif**

Hernandez named Margaret Reif as a Defendant because, as the Controller of Chester County, she is responsible for the settlement of claims "made against any officer within the jurisdiction of" Chester County. (*Id.*) This claim is not plausible because Hernandez appears to be under the misapprehension that officials of SCIC are employees of Chester County, rather than employees of the Commonwealth of Pennsylvania. As there is no basis to hold Reif or any other employee of Chester County personally responsible for an incident that occurred while Hernandez was confined at SCIC, the claim against Reif will be dismissed with prejudice.

### IV.   **CONCLUSION**

For the reasons stated, Hernandez's failure to train claim and deliberate indifference claim against Defendant Gina Clark and his deliberate indifference claim against Dr. Doe will be dismissed without prejudice. His other claims against Clark, his official capacity claims, and his claim against Margaret Reif will be dismissed with prejudice. The Court is prepared to direct service of the Amended Complaint for a responsive pleading to the remaining John Doe Defendants based on Hernandez's allegations concerning their deliberate indifference to his safety. At this time, Hernandez may choose to proceed **only** on those claims or file a second amended complaint to attempt to reassert his failure to train and deliberate indifference claims against Defendant Clark and his deliberate indifference claim against Dr. John Doe. Should he file a second amended complaint, Hernandez should (1) attempt to identify the unnamed Officers, (2) provide factual detail to support the amended claims against Clark and Dr. John Doe, and (3)

reassert all of the facts about the claims against the John Doe correctional officers that are currently proceeding. **If Hernandez does not reallege his claims against the John Doe correctional officers in a second amended complaint, they will not be part of this case**. He should also state as much information as possible about the events surrounding the alleged assault and how each individual Defendant had a basis to know he was in danger of violence from another inmate. An order follows with additional information on choosing to amend or proceeding to service.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge